LOAN #
Return To:

Doc# 9360
Bk: 3840 Pg: 190

NATIONAL GOVERNMENT LOAN CTR
BANK OF AMERICA
9000 SOUTHSIDE BLVD - BLDG 600
JACKSONVILLE, FL 32256

Prepared By:
KATRINA MCQUEEN
BANK OF AMERICA N.A.
9000 SOUTHSIDE BLVD - BLDG 600
JACKSONVILLE, FL 322560000

[Space Above This Line For Recording Data]

**State of Maine**

# MORTGAGE

| FHA Case No. |
|---|
| |

THIS MORTGAGE ("Security Instrument") is given on AUGUST 08, 2007. The Mortgagor is CHRISTOPHER A RAINEY, AN UNMARRIED PERSON

("Borrower"). This Security Instrument is given to BANK OF AMERICA N.A.

which is organized and existing under the laws of UNITED STATES OF AMERICA, and whose address is 9000 SOUTHSIDE BLVD - BLDG 600 JACKSONVILLE, FL 322560000 ("Lender"). Borrower owes Lender the principal sum of ONE HUNDRED THIRTY THREE THOUSAND NINE HUNDRED EIGHTY AND 00/100 Dollars (U.S. $ 133,980.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on SEPTEMBER 01, 2037. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security



EXHIBIT C

Doc# 9360
Bk: 3840 Pg: 191

Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the Lender, with power of sale, the following described property located in KNOX County, Maine:

"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

Parcel ID Number: MAP R3 LOT342
which has the address of 47 BIRCH LANE, WARREN [Street]
[City], Maine 04864 [Zip Code] ("Property Address");

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default.

Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.

Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Doc# 9360
Bk: 3840 Pg: 196

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may bring a lawsuit to take away all of the Borrower's remaining rights in the Property and have the Property sold. At this sale, Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs allowed by law. These costs include reasonable attorneys' fees and costs of title evidence.

Lender may require immediate payment in full under paragraph 9.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.* ) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. Borrower will not be required to pay Lender for the discharge, but Borrower will pay all costs of recording the discharge in the proper official records.

**20. Payment During Foreclosure.** Borrower agrees that Lender may accept rents from the Property, hazard insurance proceeds, condemnation awards, and any other monies produced by the Property or paid by Borrower, even though Lender has demanded immediate payment in full and begun foreclosure and sale under paragraph 18 above. Lender may use such monies to pay off any part of the sums secured without affecting Lender's right to continue foreclosure and sale.

**21. Interest paid on Monthly Payments of Taxes, Insurance and Other Charges.** Maine law requires payment of, and Lender agrees to pay Borrower, interest on items included in each monthly payment, described in paragraph 2 as (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums or insurance required by paragraph 4, in the manner and amount set forth in Maine law on the date of this Security Instrument.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider ☐ Growing Equity Rider ☐ Other [specify]
☐ Planned Unit Development Rider ☐ Graduated Payment Rider

Doc# 9360
Bk: 3840 Pg: 197

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

Margaret K. Williams

Christopher A. Rainey (Seal)
CHRISTOPHER A RAINEY -Borrower

(Seal) -Borrower

(Seal) -Borrower (Seal) -Borrower

(Seal) -Borrower (Seal) -Borrower

(Seal) -Borrower (Seal) -Borrower

STATE OF MAINE, KNOX County ss:

On this 8 day of August, 2007, personally appeared the above named CHRISTOPHER A. RAINEY and acknowledged the foregoing instrument to be his/her/their free act and deed.

Before me,

Margaret K. Williams

(Seal) Justice of the Peace/Notary Public

Margaret K. Williams
Notary Public
State of Maine
My Commission Expires
October 22, 2011



FHME 08/07/07 11:39 AM 6524416135

Doc# 9360
Bk: 3840 Pg: 198

**MAINE STATE HOUSING AUTHORITY**
**HOME MORTGAGE PROGRAM**
**MORTGAGE RIDER(S)**

**Borrower Name:** CHRISTOPHER A. RAINEY
**Co-Borrower Name:** ____________________

This Mortgage Rider is incorporated into and shall be deemed to amend and supplement the Mortgage ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to BANK OF AMERICA, NA ("Lender")

of even date covering the property described in the Security Instrument and located at:
47 Birch Lane, Warren ME 04864 ("Property").
In the event a Mobile Home is located on property owned by the Borrower, this conveyance shall also include the following Mobile Home: (please provide the year, make, model and serial number of Mobile Home)
____________________. This instrument is intended to be a financing statement filed as a fixture filing pursuant to Maine's Uniform Commercial Code – Secured Transactions.

Notwithstanding anything to the contrary in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1. **Principal Residence.** Borrower will occupy the Residence and use the Residence as Borrower's Principal Residence within sixty days after signing this Security Instrument. Borrower will continue to occupy the Residence and to use the Residence as Borrower's Principal Residence for the term of this Security Instrument unless the Lender agrees otherwise in writing.

2. **Remedies Cumulative.** All remedies provided in this Security Instrument are distinct and cumulative to any other right or remedy under this Security Instrument, any other agreement between Borrower or Lender or afforded by law or equity, and may be exercised concurrently, independently or successively.

3. **Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents, if any, of the Residence, provided that Borrower, shall, prior to acceleration hereunder or abandonment of the Residence have the right to collect and retain such rents as they become due and payable. Upon acceleration hereunder or abandonment of the Residence. Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Residence and to collect the rent of the Residence including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Residence and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's Bonds and reasonable attorney's fees, and then to the sums secured by this Security Instrument. The receiver shall be liable to account only for those rents actually received.

4. **Misrepresentation; Principal Residence.** Borrower shall use at least one unit of the Residence as Borrower's Principal Residence. If Lender determines that Borrower has made any misrepresentation (with or without fault) in Mortgage Loan Application or in related documents, Lender may, at its option, declare all the sums secured by this Security Instrument to be immediately due and payable. Lender shall have waived such option to accelerate if Lender and Borrower reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Security Instrument shall be at such rate as Lender shall request. If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance herewith. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sum declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice of demand on Borrower, invoke any remedies permitted hereunder.

5. **Waiver of Rights of Descent.** Borrower hereby relinquishes and conveys all rights of descent, or otherwise, in the Residence.



CAR

Doc# 9360
Bk: 3840 Pg: 199

6. **Mortgage Loans Insured by the Federal Housing Administration.** If the Mortgage Loan secured by the Security Instrument is insured by the Federal Housing Administration, the terms and conditions contained in this Section 6 are hereby made part of the Security Instrument. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Lender, its successors and assigns, may require immediate payment in full of all sums secured by this Security Instrument if:

1. All or part of the Property is sold or otherwise transferred by Borrower to a purchaser or other transferee,

a. who cannot reasonably be expected to occupy the Residence as a Principal Residence within a reasonable time after the sale or transfer, all as provided in Sections 143(c) and (i)(2) of the Internal Revenue Code; or

b. who has had a present ownership interest in a Principal Residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Sections 143(d) and (i)(2) of the Internal Revenue Code (except that "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143(d)(1); or

c. at an Acquisition Cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area Residences), all as provided in Sections 143(e) and (i)(2) of the Internal Revenue Code; or

d. who has an annual Gross Income in excess of that established by the Maine State Housing Authority under its applicable regulations or program guidelines in effect on the date of the sale or transfer and who has a gross family Gross Income in excess of the applicable percentage of applicable median family income as provided in Sections 143(f) and (i)(2) of the Internal Revenue Code; or

2. Borrower fails to occupy the Residence described in the Security Instrument without the prior written consent of Lender or its successors or assigns described at the beginning of this Tax-Exempt Financing Rider; or

3. Borrower omits or misrepresents a fact that is material with respect to the Security provisions of Section 143 of the Internal Revenue Code in an Application for the Mortgage Loan secured by Instrument.

B. References are to the Internal Revenue Code as amended and in effect on the date of issuance of Bonds, the proceeds of which will be used to finance the purchase of the Security Instrument and are deemed to include the implementing regulations.

C. Your Residence purchased is being financed with a Mortgage Loan made available with the assistance of the Maine State Housing Authority. This Mortgage Loan is made at an Interest Rate below what is usually being charged. Because of this, your Mortgage Loan provides that you cannot sell your Residence to a person ineligible for assistance from the Authority, unless you pay your Mortgage Loan in full. If you sell your Residence to a party ineligible for the Authority's assistance, the Authority may demand immediate full repayment of the Mortgage Loan. This could result in foreclosure of your Mortgage and repossession of the Residence. In addition, if you rent the Residence or committed fraud or intentionally misrepresented yourself when you applied for the Mortgage Loan, the Lender may foreclose your Mortgage and repossess the Residence. If the Lender takes your Residence through a foreclosure of the Mortgage because of these reasons, HUD will not be able to help you. If the money received from the foreclosure sale is not enough to pay the remaining amount of money you owe on the Mortgage Loan, the Authority may obtain a deficiency judgement against you (a court ruling that you must pay whatever money is still owed on the loan



C.A.R.

Doc# 9360
Bk: 3840 Pg: 200

after the foreclosure sale). Such judgement will be taken over by HUD if the Authority files an insurance claim against HUD because of the foreclosure. HUD may then bring an action against you to collect the judgement.

7. **Mortgages Insured by the Department of Veterans Affairs.** If the Mortgage Loan secured by the Security Instrument is insured by the Department of Veterans Affairs, the terms and conditions contained in the is Section 7 are hereby made part of the Security Instrument. Your Residence purchase is being financed with a Mortgage Loan made available with the assistance of the Maine State Housing Authority. This Mortgage Loan is made at an Interest Rate below what is usually being charged. Because of this, except in unusual circumstances in which the Maine State Housing Authority may consent to an assumption, but only to another eligible Applicant as determined by the Authority, the **MORTGAGE LOAN WILL BECOME DUE IN FULL UPON THE TRANSFER OF ANY INTEREST IN THE RESIDENCE,** whether by sale, rental, or otherwise. Except in unusual circumstances, if you sell your Residence, you must pay your Mortgage Loan off in full. If you sell your Residence and allow the buyer to make your payments for you (assume your Mortgage Loan), the Housing Authority may refuse to allow the sale and demand immediate full repayment of the Mortgage Loan. This could result in foreclosure or repossession of the Residence. If the Lender takes your Residence through foreclosure of the Mortgage because of this, VA will not be able to help you. In addition, VA may have to pay a claim to the Housing Authority for any loss incurred on your Mortgage Loan. You may then be obligated to the VA for any claim paid by the VA to the Housing Authority. You may avoid such actions by paying your Mortgage Loan in full when you sell your Residence.

By signing below, Borrower accepts and agrees to the terms and provisions in this Mortgage Rider.

Done and dated this 8 day of August, 2007

Witness: Margaret K. Williams Borrower: Christopher A. Rainey

Name: CHRISTOPHER A. RAINEY

Witness: ____________________ Co-Borrower: ____________________

Name: ____________________

STATE OF MAINE
COUNTY OF Knox, ss

DATE: 8-8-07

Personally appeared before me the above-named CHRISTOPHER A. RAINEY & ____ and acknowledged the above instrument to be his/her/their/ free act and deed.

Name: Margaret K. Williams
Notary Public/Attorney-at-Law

Margaret K. Williams
Notary Public
State of Maine
My Commission Expires
October 22, 2011

HMP-7-060107
Page 3 of 3

Doc# 9360
Bk: 3840 Pg: 201

EXHIBIT A
(07-03569P RAINEY)

A certain lot or parcels of land with any buildings thereon situated in Warren, County of Knox and State of Maine, bounded and described as follows:

Beginning at a steel pin set at the Northeast corner of lot #1; thence running Easterly along the line of the private road a distance of 210 feet more or less to a steel pin at a corner; thence turning South 7 degrees west and running a distance of 201 feet to a steel pin at a corner; thence turning North 83 degrees west and running a distance of 210 feet to a steel pin at a corner; thence turning North 7 degrees East and running a distance of 196 feet to the place of beginning.

Also being described as Lot #2 on the plan of "South Pond" Subdivision of Paul Crowley, by George Luce RLS #421, dated January 15, 1988 and recorded in the Knox County Registry of Deeds in Cabinet 7, Sheet 98.

Including the right of ingress and egress to a right of way from the Nilo Hill Road.

The above parcel is subject to the following covenants, conditions and restrictions with run with the land for the benefit of any and all persons who may now own, or who may hereafter own, any of these lots, and such persons are specifically given the right to enforce these covenants, conditions and restrictions, to wit:

1. Erosion control. In order to prevent soil erosion, all excavations, digging, driveway construction or earthwork of any kind must be reseeded, mulched or other appropriate erosion control measures taken with fifteen days.
2. Road Maintenance. The maintenance and plowing of the road shall be the responsibility of the users. The owners of each lot shall be financially responsible for their proportionate share of the plowing and maintenance of the road. If a road association is formed in the future, all lot owners must join and participate.
3. Easements. Each lot is conveyed subject to all existing utility easements, if any, existing roads and rights of way, and existing drainage ditches for surface water. No lot owner may undertake any activity which will adversely affect these easements, rights of way or drainage of surface water.

Being the same premises as described in the deed from William Heal to the Mortgagor herein of substantially even date to be recorded in the Knox County Registry of Deeds.

GAR.

KNOX SS: RECEIVED
Aug 10,2007
at 11:56:53A
ATTEST: LISA J SIMMONS
REGISTER OF DEEDS